UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO FRANCISCO SANTIAGO (A-Number: 235-542-269),<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, *et al.*,<br><br>Respondents. | Case No. 1:26-cv-5347-TLN-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, Mario Francisco Santiago, through counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his immigration detention without a bond hearing violates due process and the Immigration and Nationality Act. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner, a citizen of Guatemala, entered the United States in 1997 without inspection by immigration authorities. ECF No. 1 at 15. Petitioner has lived in the United States continuously since that time. *Id.* at 2. In 2000, petitioner was convicted of a misdemeanor for leaving the scene of an accident. ECF No. 9 at 14. Other arrests, in 2000 and 2005, were dismissed. *Id.* at 16-18. No charges were filed for a 2011 misdemeanor arrest. *Id.* at 19.

Petitioner is the father of four U.S. citizen children. ECF No. 1 at 10. Petitioner applied for asylum in February 2025, and that application is still pending. *Id.* at 15, 129. Petitioner had

no other contact with immigration authorities until May 1, 2026, when Border Patrol agents checked his vehicle registration and stopped his car to investigate his immigration status. *Id.*; ECF No. 9 at 5. Petitioner has been detained in immigration custody since that date without a bond hearing. *Id.* at 10.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his detention without a bond hearing violates the Immigration and Nationality Act. ECF No. 1 at 33. Respondents' position is that petitioner, who has lived in the United States for nearly thirty years, is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2). ECF No. 9 at 1. Respondents assert that that this case "is in the category of immigration habeas cases for which the Court has typically ordered a bond hearing." *Id.* Respondents do not dispute any of petitioner's factual allegations.

Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A). Critically, no bond hearing is provided for a noncitizen detained under this section. *Id.* By contrast, "[u]nder § 1226(a) and its implementing regulations, a detainee may

request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

For decades, the government applied section 1226(a)—and not section 1225(b)(2)(A)—to noncitizens apprehended in the interior of the United States. *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."). In July 2025, however, the Department of Homeland Security ("DHS") revisited its legal position and now maintains, as in this case, that applicants for admission within the meaning of section 1225(a) are subject to mandatory detention under section 1225(b).

This issue is one of statutory interpretation, and so I begin with the plain text of the Immigration and Nationality Act. *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019). Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). There is only one exception to mandatory detention: a noncitizen may be paroled into the United States "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

While the text of section 1225(b)(2)(A) limits its reach to applicants "seeking admission," section 1226(a) does not include the same qualifying language. Section 1226(a) provides that, for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."[1] 8 U.S.C. §§ 1226(a)(1)-(2).

Petitioner entered the United States in 1997 and has lived continuously in this country, raising his United States children and working. ECF No. 1 at 10. I find that the government's

[1] Section 1226(c) mandates detention of noncitizens falling into "one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289. There is no argument or evidence suggesting that this section applies to petitioner.

interpretation of section 1225 and application of that section to petitioner violates the rule against surplusage in three ways. First, for section 1225(b)(2)(A)'s mandatory detention to apply, "a noncitizen must (1) be an applicant for admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be admitted.'" *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, *11 (E.D. Cal. Oct. 16, 2025). If, as the government argues, all "applicants for admissions" were also individuals "seeking admission," the phrase "seeking admission" would be unnecessary. The government's reading, therefore, runs contrary to the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.").

Second, the government's reading cannot be squared with the text of section 1226. Were it possible to interpret section 1225(b)(2)(A) in the manner favored by the government, section 1226(a)'s requirement that noncitizens be afforded bond hearings—arguably the section's centerpiece—would serve no purpose because the government would be allowed to detain all "applicants for admission" under section 1225(b)(2)(A). Further, as noted, under section 1226(c), Congress mandated the detention of certain categories of noncitizens. 8 U.S.C. § 1226(c). If, as the government now contends, section 1225(b)(2)(A) can be applied to all noncitizens who are inadmissible, section 1226(c) would also be superfluous.

Third, the Laken Riley Act ("LRA")—passed in January 2025—would also be rendered superfluous. The LRA amended section 1226(c) to add new categories of mandatory detention. *See Garcia v. Noem*, No. 25-cv-2180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025). Under the government's theory of section 1225(b)(2)(A), the LRA would be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted—and, in fact, required—by section 1225(b)(2)(A), the amendment would be surplusage. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

Respondents' theory, essentially, is that both sections 1226(a) and 1226(c) have been

taken out of commission, not by any new law or act of Congress, but by a shift in executive branch policy. This interpretation collides squarely with the rule against surplusage. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

I also find that the government's interpretation runs contrary to the DHS's longstanding practice prior to July 2025. As noted, the government previously interpreted these provisions in the manner argued by petitioner. Prior agency practice, though not dispositive, may inform this court's determination of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is."). Other courts have emphasized the persuasive value of the DHS's "longstanding agency practice." *See Rodriguez*, 779 F. Supp. 3d at 1259 ("Congress enacted the LRA against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

Finally, I note that arguments substantially similar to those made by the government here have been rejected by a large majority of district courts nationwide. *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). The government's argument also runs contrary to *Jennings*, which held that section 1225(b) "applies primarily to aliens seeking entry into the United States," whereas sections 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ." 583 U.S. at 289, 297. While the government's interpretation was endorsed by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the persuasive power of an agency ruling is limited. *See Loper Bright*, 603 U.S. at 400.

Petitioner was detained in the interior of the United States where he lived openly for almost three decades. ECF No. 9 at 5. The argument that petitioner is an "applicant for admission" under immigration law is not supported by binding authority, and it has been "overwhelmingly rejected" by district courts across the nation. *See Morales-Flores v. Lyons*, No. 1:25-cv-1640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases). Accordingly, I find that petitioner's detention is governed by section 1226 and not, as respondents

argue, by section 1225. Given this finding, I must determine the appropriate remedy. Petitioner requests immediate release. ECF No. 1 at 36. Respondents counter that this case is "in the category of immigration habeas cases for which the Court has typically ordered a bond hearing." ECF No. 9 at 1. Respondents base this assertion on their assessment that petitioner "has criminal history." *Id.* However, petitioner's only conviction is a 1999 misdemeanor for leaving the scene of an accident. *Id.* at 14. Respondents do not explain how that twenty-five-year-old misdemeanor impacts this assessment. Other arrests led to dismissed charges, and respondents have not provided any evidence regarding the underlying conduct. *Id.* at 16-18.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Moreover, where the government has erroneously applied section 1225(b) to a petitioner, courts have ordered immediate release. *See, e.g.*, *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

Here, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for petitioner's detention. *See Munaf*, 553 U.S. at 693. Petitioner was detained on his way to work when Border Patrol agents, in an arms-length vehicle registration check, determined that his car was registered to an undocumented noncitizen and pulled him over for further inquiry. *See* ECF No. 9 at 5. Petitioner's rap sheet reveals one misdemeanor conviction, from 1999, for leaving the scene of an accident. *Id.* at 14. Arrests in 2000 and 2005 led to dismissed charges. *Id.* at 16-18. A misdemeanor arrest in 2011 was never charged. *Id.* at 19. Respondents fail to draw any connection between this dated history and

petitioner's current flight risk or danger. *See* ECF No. 9. Accordingly, this dated criminal history does not weigh against immediate release. *See Luis Manuel G.S. v. Chestnut*, No. 1:26-cv-4303-TLN-JDP, 2026 WL 1723983 (E.D. Cal. June 15, 2026) (ordering immediate release of petitioner with nineteen-year-old misdemeanor traffic conviction);

Respondents cannot (and do not) "reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating [p]etitioner's due process rights." *See Pineda v. Chestnut*, No. 1:25-cv-1970-DC-JDP, 2026 WL 25510, at *6 (E.D. Cal. Jan. 5, 2026) (citing *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983)). Petitioner's due process rights have been violated such that the provision of a bond hearing well after his detention is constitutionally insufficient. *See Feng*, 2026 WL 472635, at *1. Under these circumstances, I find that the "typical remedy" of release is appropriate. *See Munaf*, 553 U.S. at 693.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 235-542-269) from their custody. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter in accordance with 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Mesa Verde Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the

court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 4, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE